UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Orlando M. Bobadilla,

Petitioner,

vs.                                        REPORT AND RECOMMENDATION

Terry Carlson, Warden,

Respondent.          Civ. No. 07-1649 (PJS/RLE)

* * * * * * * * * * * * * * * * * * *

I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, pursuant to Title 28 U.S.C. §2254.

The Petitioner Orlando M. Bobadilla ("Bobadilla") appears by Lynne A. Torgerson, Esq., and the Respondent Terry Carlson appears by Kimberly R. Parker, Assistant State Attorney General.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied.

## II.  Facts and Procedural Background

Bobadilla is a State prisoner, who is currently serving a 144-month sentence at the Minnesota Correctional Facility, in Moose Lake, Minnesota ("MCF-ML").  The sentence resulted from Bobadilla's conviction, by a Jury, on September 4, 2003, in the Kandiyohi County District Court, on one (1) Count of Criminal Sexual Conduct in the First Degree, for the sexual penetration of a minor under thirteen (13) years of age, in violation of Minnesota Statutes Section 609.342, Subdivisions 1(a), and 2, and one Count of Criminal Sexual Conduct in the Second Degree, for sexual contact with a minor under thirteen (13) years of age, in violation of Minnesota Statutes Section 609.343, Subdivisions 1(a), and 2(a).  See, Amended Petition, Docket No. 9, at 1. The facts which led to Bobadilla's conviction were summarized by the Minnesota Supreme Court, in Bobadilla's direct appeal, as follows:

> On Friday afternoon, May 2, 2003, 3-year-old T.B. was dropped off by his mother for a weekend visit with his father, who was then residing with several relatives, including T.B.'s uncle, 23-year-old respondent Orlando Bobadilla.  T.B.'s mother worked a 3:00 p.m.-11:00 p.m. shift on weekends, and following the end of her shift on Sunday, May 4, 2003, she picked up T.B. sometime after 11:00 p.m.
>
> As T.B.'s mother was readying T.B. for bed and changing his pull-up diaper, she "noticed that his bottom was a little

red" and asked him what had happened. He became nervous and started playing with his hair. She told him that she was his mother and that he could tell her anything. T.B. then told her that "his Uncle Orlando had put his finger in his 'booty,'" T.B.'s word for buttocks. T.B.'s mother said "okay," finished changing him, and sent him off to his room. She then phoned T.B.'s father and reported what T.B. had said. After hearing of T.B.'s story, T.B.'s grandmother decided that they should take him to the hospital. As T.B. and his mother were waiting to be picked up to go to the hospital by T.B.'s father and grandmother, T.B.'s mother asked him if he had asked Bobadilla to stop. T.B. indicated that he had, and that Bobadilla had said he was sorry.

T.B.'s parents brought T.B. into the hospital's emergency room where he was examined by an emergency-room physician. After talking to T.B.'s parents, the physician conducted a full-body examination of T.B., and observed an abnormal erythema, or redness, around his rectum. The physician saw no ulcerations or lesions, which would have indicated a chronic problem, and believed the erythema was consistent with what the child had disclosed.

A Willmar Police Department officer was dispatched to the hospital on an assault report. The officer initially met with the emergency room nurse and then with T.B.'s parents. After doing so, the officer forwarded his report to both the Investigations Unit of the police department and the Kandiyohi County Family Service Department. Over the next several days, a Kandiyohi County child-protection worker from the Family Service Department tried a number of times to contact T.B.'s mother by phone, finally connecting with her on May 9, 2003. The child-protection

worker arranged to have T.B. interviewed that day at the law enforcement center.

T.B. and his parents arrived at the law enforcement center at approximately 1:30 p.m.  The child-protection worker and a Willmar police detective, out of uniform, met the family and escorted them to the interview room.  The interview room, called the "child friendly room," was specifically used for interviewing children and featured a video camera that recorded the exchange from behind a one-way mirror.  The detective did not participate in the interview, but observed, sitting across from the child-protection worker and T.B.  The child-protection worker conducted the interview using the CornerHouse protocol, which she described as a technique "specifically geared towards interviewing children who have been victims of sexual abuse."  The protocol consists of establishing rapport with the child, ascertaining the child's terms for parts of the anatomy, ascertaining whether abuse occurred, and closing with a "safety message."  The CornerHouse technique instructs the interviewer to ask nonleading questions, to use terms children would understand, and to progress quickly since young children have short attention spans.

The child-protection worker began the interview by asking T.B. about his parents and she then drew pictures of them. Next, using a diagram of a male, she had T.B. identify his names for various parts of the anatomy, starting with the head and moving down.  Then the following exchange occurred:

Child-Protection Worker [("CPW")]:  [H]as anybody hurt your body?

T.B.:   Mmm, MmmMmm (affirmative)

CPW:  Yeah.  Who hurt your body?

T.B.:  Orlando did.

CPW:  Orlando did * * * How did Orlando hurt your body?

T.B.:  He (inaudible) my (inaudible).

CPW:  What?

T.B.:  He, he (inaudible) touch my (inaudible).

CPW:  (inaudible) your bootie.  Okay.  What did he do to your bootie?

T.B.:  (inaudible) put his finger in there.

CPW:  He just put his finger in there?  Okay * * *.

T.B. then identified what he meant by "booty" by pointing to the buttocks area on the diagram the child-protection worker had provided.

The child-protection worker asked T.B. where he and Bobadilla were at the time of the incident, and T.B. said they were in his father's room.  She asked where his father was while it happened.  T.B. said that his father had gone downstairs and then come upstairs, but he also said "yeah" when asked if his father had seen it happen.   Then the child-protection worker asked him if he would show her what had happened using an anatomically correct doll.  He said he would, but ultimately did not.  She also asked if Orlando touched him on his skin or on his clothes, and T.B.

> replied, "My skin."   The child-protection worker then
> closed the interview by telling T.B. that what had happened
> was not okay, and that he should tell someone, like his
> mother, if something similar ever happened again.

State v. Bobadilla ("Bobadilla II"), 709 N.W.2d 243, 246-247 (Minn. 2006), cert. denied, --- U.S. ----, 127 S.Ct. 382 (2006).[1]

At Bobadilla's criminal Trial, the Court found T.B. incompetent to testify. Id. at 248. However, the Court concluded that T.B.'s statements to his mother, and the child-protection worker ("CPW"), "were sufficiently reliable to permit their admission as substantive evidence under the hearsay exception embodied in Minn. Stat. §595.02, subd. 3 (2004)."[2]  Id.  Accordingly, the Court "allowed both T.B.'s mother and the child-protection worker to testify about T.B.'s statements, and also allowed the state

---

[1]The Record before us contains no testimony, or other evidence, which would rebut, by clear and convincing evidence, the presumption of correctness in the State Court's factual findings.  See Title 28 U.S.C. §2254(e)(1); Guinn v. Kemna, 489 F.3d 357, 359 (8th Cir. 2007); Lupien v. Clarke,  403 F.3d 615, 618 (8th Cir. 2005); Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005).  Accordingly, for the purposes of this Petition, we accept, as our factual Record, those facts which were set forth by the Minnesota Supreme Court in State v. Bobadilla ("Bobadilla II"), 709 N.W.2d 243, 246-247 (Minn. 2006), cert. denied, --- U.S. ----, 127 S.Ct. 382 (2006).

[2]Minnesota Statutes 595.02, Subdivision 3, prescribes a procedure, by which out-of-court statements, which are made by children under the age of ten (10), and which concern allegations of sexual abuse, may be admissible in Court as substantive evidence, if the Court finds sufficient indicia of reliability.

to show the videotape of T.B.'s interview." Id. Bobadilla also testified at the Trial, and denied the allegations. Id.

Following his conviction, Bobadilla filed a direct appeal with the Minnesota Court of Appeals, raising several evidentiary challenges. See, State v. Bobadilla ("Bobadilla I"), 690 N.W.2d 345 (Minn. App. 2004). Although the Court rejected most of Bobadilla's claims, it concluded that the admission of T.B.'s videotaped statement had violated Bobadilla's Sixth Amendment rights, pursuant to the Confrontation Clause, thereby entitling Bobadilla to a new Trial. Id. at 350, citing Crawford v. Washington, 541 U.S. 36 (2004).[3]

The Court found that the CPW had interviewed T.B. in order to develop a case against Bobadilla, which rendered T.B.'s statements testimonial in nature, under Crawford. Id. at 349. Accordingly, because T.B. was unavailable as a witness, and because Bobadilla did not have a prior opportunity to cross-examine T.B., the Court vacated Bobadilla's conviction and ordered a new Trial. Id. at 350, citing Crawford v. Washington, supra at 68. In addition, the Court ruled that, "because T.B.'s videotaped interview was inadmissible under Crawford, the trial court also abused its

---

[3]The United States Supreme Court issued its decision, in Crawford v. Washington, 541 U.S. 36 (2004), after Bobadilla's conviction, but before the Minnesota Court of Appeals  considered his direct appeal.

discretion in allowing the child-protection worker to testify about the contents of that interview." Id.[4]

Following an appeal by the State, the Minnesota Supreme Court reversed the decision of the Minnesota Court of Appeals, and reinstated Bobadilla's conviction. See, Bobadilla II, supra at 246. The Court observed that "Crawford's Confrontation Clause test bars at trial all 'testimonial' out-of-court statements when the accused is not afforded 'a prior opportunity to cross-examine' the declarant." Id. at 249, citing Crawford v. Washington, supra at 61. Since there was no dispute that T.B. had not been subject to cross-examination, the Court observed that its only inquiry would be "whether T.B.'s statements in the interview with the child-protection worker were 'testimonial' under Crawford." Id. The Court then outlined eight (8) factors, for determining whether a statement is "testimonial," under Crawford, as follows:

> (1) whether the declarant was a victim or an observer; (2) the declarant's purpose in speaking with the officer (e.g.,

---

[4] The Minnesota Court of Appeals rejected Bobadilla's argument, that the Trial Court erred in admitting T.B.'s statement to his mother, because it concluded that the statement was not testimonial, given that "T.B.'s mother questioned T.B. about the redness around his anus out of concern for his health, not because she expected to develop a case against Bobadilla." Bobadilla I, supra at 350. Accordingly, the Court concluded that the Trial Court had properly followed the procedures of Minnesota Statutes Section 595.02, Subdivision 3, for admitting T.B.'s out-of-Court statement to his mother.

> to obtain assistance); (3) whether it was the police or the declarant who initiated the conversation; (4) the location where the statements were made (e.g., the declarant's home, a squad car, or the police station); (5) the declarant's emotional state when the statements were made; (6) the level of formality and structure of the conversation between the officer and declarant; (7) the officers' purpose in speaking with the declarant (e.g., to secure the scene, determine what happened, or collect evidence); and (8) if and how the statements were recorded.

Id. at 250, citing State v. Wright, 701 N.W.2d 802, 812-13 (Minn. 2005).

The Court observed that the second and seventh factors "were the central considerations," while "the other six factors are probative of these two." Id.

The Court then noted "that the key to determining whether a statement is testimonial is whether either a declarant or government questioner is acting, to a substantial degree, in order to produce a statement for trial." Id. at 252 [citation omitted]. Accordingly, the Court focused its inquiry on "whether a reasonable government questioner or declarant in the relevant situation would exhibit that purpose," id. at 253, and reiterated that an inquiry should not be made into the "subjective motivations of declarants or questioners, because Crawford explained that 'only cross-examination' can reveal a declarant's subjective perception of his or her situation." Id., citing Crawford v. Washington, supra at 66.

- 9 -

After canvassing the case law, with respect to child-declarants, the Court concluded that "in this case, neither the child-protection worker nor the child declarant, T.B., were acting, to a substantial degree, in order to produce a statement for trial." Id. at 254. The Court noted that neither party disputed that T.B. was interviewed, pursuant to Minnesota Statutes Section 626.556,which requires certain individuals to "report the maltreatment of minors either to law enforcement or to the local welfare agency." Id. Under that statute, "the local welfare agency shall immediately conduct an assessment including gathering information on the existence of substance abuse and offer protective social services for purposes of preventing further abuses, safeguarding and enhancing the welfare of the abused or neglected minor, and preserving family life whenever possible." Id., quoting Minnesota Statutes Section 626.556, Subdivision 10(a).

The Court explained that the statute also requires that, "[t]o the extent that an allegation of abuse alleges a violation of a criminal statute, the local welfare agency and law enforcement must 'coordinate the planning and execution of their respective investigation and assessment efforts to avoid a duplication of fact-finding efforts and multiple interviews,'" and prepare separate reports. Id., quoting Minnesota Statutes Section 626.556, Subdivision 10(a). In addition, the statute requires the local welfare

agency "to use a 'nondirective' question-and-answer format and to make audio-video recordings of the interviews of alleged victims of sexual abuse." <u>Id.</u>, citing <u>Minnesota Statutes Section 626.556, Subdivision 10(j)(2)</u>.

Accordingly, the Court concluded that "the interview of T.B. was initiated by a child-protection worker in response to a report of sexual abuse for the overriding purpose of assessing whether abuse occurred, and whether steps were therefore needed to protect the health and welfare of the child." <u>Id.</u> at 255.  In so deciding, the Court found that "[t]he clearly delineated purpose of this statutory scheme is to protect the health and welfare of children," <u>id.</u> at 254, citing <u>Minnesota Statutes Section 626.556, Subdivision 1</u>, as compared to "statutory interviewing scheme[s] * * * designed with the express purpose of facilitating the creation of out-of-court statements for a future trial." <u>Id.</u> at 255, distinguishing <u>Snowden v. State</u>, 846 A.2d 36, 47 (Md. App. 2004)(concluding that "[t]he children were interviewed for the expressed purpose of developing their testimony * * * , under the relevant Maryland statute that provides for the testimony of certain persons in lieu of a child, in a child sexual abuse case."), aff'd, 867 A.2d 314 (Md. 2005).  The Court went on to find that, "[i]f part of the purpose of this interview was to produce a statement for use at a

future trial, such a purpose was at best incidental to the main purpose:  assessing and responding to imminent risks to T.B.'s health and welfare." Id.

On October 10, 2006, the United States Supreme Court denied Bobadilla's Petition for a Writ of Certiorari. See, Bobadilla v. Minnesota, --- U.S. ----, 127 S.Ct. 382 (2006). Thereafter, on May 4, 2007, Bobadilla filed an Amended Application for Habeas Corpus under Title 28 U.S.C. §2254, alleging that he was unlawfully convicted, in violation of Crawford, on the basis of inadmissible testimony -- namely, T.B.'s videotaped statements -- and that there was otherwise insufficient evidence to sustain his conviction.[5]  See, Amended Petition, Docket No. 9, at 4; Petitioner's Memorandum in Support, Docket No. 10, at 17, 24.

For his part, the Respondent argues that the Minnesota Supreme Court's decision was neither contrary to nor an unreasonable application of Crawford, and therefore, he asks that we deny Bobadilla's Petition.   See, Respondent's

---

[5]The Petitioner originally filed an Application for Habeas Corpus on March 26, 2007, see, Docket No. 1, and subsequently, filed a Motion seeking an extension of time in which to amend that Petition. See, Docket No. 4.  By Order dated April 6, 2007, see, Docket No. 8, we granted the Petitioner leave to amend his Petition, and we accepted the submission, which is dated May 4, 2007, as his Final Amended Petition.  See, Docket No. 9.

Memorandum in Opposition, Docket No. 15, at 1-2.   We address the parties' arguments in turn.

## III.  Discussion

A.     Standard of Review.  "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Title 28 U.S.C. §2254(a).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991).  As a result, before a Writ may issue, a petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty.  Id.; see also, Lupien v. Clarke, 403 F.3d 615, 619 (8th Cir. 2005); Newton v. Kemna, 354 F.3d 776, 782 (8th Cir. 2004), cert. denied, 543 U.S. 979 (2004); Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in State Court.   See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, Lockyer v. Andrade, 538 U.S. 63, 70 (2003)

("AEDPA circumscribes a federal habeas court's review of a state court decision.").

A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ

of Habeas Corpus, is now limited to the narrow class of claims which have been fully

exhausted in the State Courts, and which involve an adjudication that either:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Title 28 U.S.C. §2254(d).

The Supreme Court has determined that the "contrary to," and "unreasonable

application" clauses of Section 2254(d)(1), present two separate grounds on which

a Federal Court may grant Habeas relief to claims adjudicated in the State Courts.

See, Williams v. Taylor, 529 U.S. 362 (2000).  The Court has explained, as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's]

- 14 -

decisions but unreasonably applie[d] that principle to the
facts of the prisoner's case.

Id. at 412-13.

The Court further explained that a consideration of a State Court's decision, under the

"unreasonable application" clause, requires a Federal Court to "ask whether the state

court's application of clearly established federal law was objectively unreasonable."

Id. at 409; see also, Underdahl v. Carlson, 462 F.3d 796, 798 (8th Cir. 2006); Davis

v. Norris, 423 F.3d 868, 874-75 (8th Cir. 2005); LaFrank v. Rowley, 340 F.3d 685,

689 (8th Cir. 2003), cert. denied, 541 U.S. 950 (2004).

Under this heightened standard of review, a Federal Court "may not issue the

writ simply because that court concludes in its independent judgment that the relevant

state court decision applied clearly established federal law erroneously or

incorrectly," but "[r]ather, that application must also be unreasonable." Id. at 411; see

also, Davis v. Norris, supra at 875; Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir.

2001)(examining the impact of Williams on Habeas proceedings), cert. denied, 534

U.S. 1138 (2002); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir. 2001), cert.

denied, 536 U.S. 915 (2002); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir.

2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, Williams affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations.  See, e.g., Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda purposes is a question of law subject to the first prong of Section 2254(d), when the relevant facts are undisputed).  Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable.  "'[O]bjectively unreasonable' does not mean 'clear error,' because '[t]hese two standards * * * are not the same,'" and "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  LaFrank v. Rowley, supra at 689, quoting Lockyer v. Andrade, supra at 75.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations rendered by a State Tribunal, which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary.  See, Guinn v. Kemna, 489 F.3d 357, 359 (8th Cir. 2007); Lupien v. Clarke, supra at

618; <u>Green v. Norris</u>, 394 F.3d 1027, 1029 (8th Cir. 2005). Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Kinder v. Bowersox</u>, 272 F.3d 532, 538 (8th Cir. 2001); <u>McDonald v. Bowersox</u>, 101 F.3d 588, 592 (8th Cir. 1996)("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997). Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" <u>Kinder v. Bowersox</u>, supra at 538, citing <u>Title 28 U.S.C. §2254(e)(1)</u>.

B.    <u>Legal Analysis</u>.  In his direct appeal, and now in his Petition for Habeas relief, Bobadilla argues that he was deprived of his Sixth Amendment right to confront T.B., when the Trial Court admitted T.B.'s videotaped statements into evidence.

The Confrontation Clause of the Sixth Amendment mandates as follows:  "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]"  <u>United States Constitution, Amendment VI</u>.  At the

outset, we observe that both the Minnesota Court of Appeals, and the Minnesota Supreme Court, correctly identified Crawford v. Washington, supra, as the Supreme Court precedent which controlled Bobadilla's constitutional challenge to his conviction.[6]  In Crawford, the United States Supreme Court held that testimonial statements may not be admitted at Trial, "unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine her."  United States v. Bordeaux, 400 F.3d 548, 555 (8th Cir. 2005), citing Crawford v. Washington, supra. In Crawford, the defendant was accused of stabbing a man, in the presence of his wife, Sylvia, and the testimonial statement at issue was Sylvia's tape-recorded statement to the police, in which she described the crime.  See, Crawford v.

---

[6]We reject the Respondent's contention, that Crawford is inapplicable to Bobadilla's case.  The United States Supreme Court has affirmatively ruled that Crawford announced a new rule of criminal procedure, but that it did not meet the criteria for retroactive application to cases on collateral review, under the standard of Teague v. Lane, 489 U.S. 288 (1989).  See, Whorton v. Bockting, --- U.S. ----, 127 S. Ct. 1173, 1181-83 (2007).  Here, Crawford was decided while Bobadilla's direct appeal was pending before the Minnesota Court of Appeals.  See, Griffith v. Kentucky, 479 U.S. 314, 328 (1987)(holding that new rules for the conduct of criminal prosecutions are only to be applied retroactively to cases pending on direct review or not yet final).  Accordingly, Bobadilla's conviction was not yet final, and Crawford applies to his case, as correctly noted by both the Minnesota Court of Appeals, and the Minnesota Supreme Court.  See, Griffith v. Kennedy, supra at 321 n. 6 ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.")[citations omitted].

Washington, supra at 38.  After the defendant invoked his marital privilege, so as to preclude Sylvia from testifying at his Trial, the Trial Court admitted the tape-recorded statement into evidence.  Id. at 40.  Pursuant to the defendant's direct appeal, the Supreme Court granted certiorari and reversed his conviction, after concluding that the admission of the tape-recorded statement violated the Confrontation Clause.  Id. at 68.

In so ruling, the Supreme Court examined the history of the Confrontation Clause, and the underlying common law rights, and determined that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused."  Id. at 50.  The Court further determined that "the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee."  Id. at 61.  Accordingly, the Court overruled the holding of Ohio v. Roberts, 448 U.S. 56 (1980), insofar as that precedent related to testimonial statements.  Id. at 67.  Under Roberts, hearsay could be admitted, following a judicial determination that such hearsay bore adequate "indicia of reliability."  Id.  Instead, the Crawford Court held that, when a witness is unavailable at Trial, that witness's

- 19 -

**testimonial** hearsay will only be admitted when its "reliability [has been] assessed in a particular manner:  by testing in the crucible of cross-examination."  Id. at 61.

In its ruling, the Crawford Court noted that "testimony" is "typically [defined as] 'a solemn declaration of affirmation made for the purpose of establishing or proving some fact.'"  Id. at 51, quoting 2 N. Webster, An American Dictionary of the English Language (1828).  It further observed that "[v]arious formulations of this core class of 'testimonial' statements exist," including the following proposed definitions:

> "[E]x parte in-court testimony or its functional equivalent -- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," Brief for Petitioner 23; "extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," White v. Illinois, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (THOMAS, J., joined by SCALIA, J., concurring in part and concurring in judgment); [or] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," Brief for National Association of Criminal Defense Lawyers et al. as Amici Curiae 3.

Id. at 51-52.

- 20 -

Nonetheless, the <u>Crawford</u> Court expressly declined to "spell out a comprehensive definition of 'testimonial,'" <u>id.</u> at 68, thereby leaving lower Courts to grapple with the issue.  However, the Court stated that testimonial hearsay included, "at a minimum * * * prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and * * * police interrogations."[7]  <u>Id.</u>  The Court further advised it "use[d] the term 'interrogation' in its colloquial, rather than any technical legal, sense."  <u>Id.</u> at 53 n. 4.

Here, there is no contention that Bobadilla had any prior opportunity to cross-examine T.B., nor is there any dispute that T.B. was found incompetent to testify, and therefore, was unavailable at Trial.  Accordingly, the sole issue before us is the Minnesota Supreme Court's determination that T.B.'s videotaped  statements were not testimonial, under <u>Crawford v. Washington</u>.  With the foregoing as our backdrop,

_____

[7]The <u>Crawford</u> Court observed that the common law right of confrontation had developed against magistrates and justices of the peace, who conducted examinations, "but had an essentially investigative and prosecutorial function," given that "England did not have a professional police force until the 19th century[.]"  See, <u>Crawford v. Washington</u>, supra at 53 [citation omitted].   In its consideration of police interrogations, the <u>Crawford</u> Court stated that "[t]he involvement of government officers in the production of testimonial evidence presents the same risk, whether the officers are police or justices of the peace[,]" <u>id.</u>, presumably referring to the risk of one-sided interrogation.  <u>Id.</u> at 56 n. 7 ("Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse[.]").

- 21 -

we turn to consider Bobadilla's argument, that the Minnesota Supreme Court applied a subjective standard, which was contrary to the Supreme Court's holding in Crawford, or alternatively, that the Minnesota Supreme Court unreasonably applied the standard imposed by Crawford.

       1.     The "Contrary To" Clause.  We need only briefly address Bobadilla's assertion that the Minnesota Supreme Court's decision was contrary to the Supreme Court's holding in Crawford v. Washington.  See, Title 28 U.S.C. §2254(d)(1).  Bobadilla argues that the Minnesota Supreme Court considered the subjective intent of T.B., in making the videotaped statement, as well as the CPW, in obtaining that statement, and he contends that this consideration of subjective intent is contrary to the holding of Crawford.  Bobadilla's argument is without merit.

      First, the Minnesota Supreme Court explicitly stated that its inquiry was objective, rather than subjective, as follows:

> Whether a declarant or government questioner is acting, to a substantial degree, in order to produce a statement for trial is determined by asking whether a reasonable government questioner or declarant in the relevant situation would exhibit that purpose.  We make this inquiry, as opposed to an inquiry into the subjective motivations of declarants or questioners, because Crawford explained that "only cross-examination" can reveal a declarant's subjective perception of his or her situation.  541 U.S. at

- 22 -

66, 124 S.Ct. 1354.  In addition, this approach is consistent with our reasoning in [State v. Wright, 701 N.W.2d 802 (Minn. 2005),] in which we looked to the likely motivations of reasonable people in the relevant situations, see 701 N.W.2d at 811, 813-14, but rejected an inquiry that hinged on the perspective of an objectively situated person who was unaffected by the context in which the statement was made, see id. at 814.  In so doing, we explained that the latter approach would be overbroad, and would improperly ignore statements' "interrogative qualities," or the contextual aspects of the questioning. Id.  Finally, we note that an inquiry into the purpose of a reasonable government questioner or declarant in the relevant situation also conforms with Crawford's core categories of testimonial statements * * * since a reasonable questioner taking a statement in any one of those situations would always exhibit a substantial concern with producing a statement for use in legal proceedings.  541 U.S. at 68, 124 S.Ct. 1354.

Bobadilla II, supra at 253.

Here, the Minnesota Supreme Court concluded that neither the CPW nor T.B. "were acting, to a substantial degree, in order to produce a statement for trial." Id. at 254. However, the Court reached that conclusion within the context of the statutory scheme of Minnesota Statutes Section 626.556, the purpose of which is to "repor[t], investigat[e], and respon[d] to threats to children's health or welfare." Id.

Contrary to Bobadilla's assertions, the Minnesota Supreme Court made no mention of the subjective intentions of either T.B., or the CPW.  Instead, it considered

the declarant's purpose, and the interviewer's purpose, from an objective standpoint -- and that inquiry into purpose was contemplated by the <u>Crawford</u> Court.  See, <u>Crawford v. Washington</u>, supra at 56 n. 7 ("Involvement of government officers in the production of testimony with **an eye toward trial** presents unique potential for prosecutorial abuse[.]")[emphasis added].

We acknowledge the language of the Minnesota Supreme Court that, "given T.B.'s very young age, it is doubtful that he was even capable of understanding that his statements would be used at a trial." <u>Id.</u> at 255.  However, we reject Bobadilla's argument, that the statement is evidence that the Minnesota Supreme Court improperly focused on T.B.'s subjective intentions, because the Court continued its analysis by stating that "children of T.B.'s age are simply unable to understand the legal system and the consequences of statements made during the legal process." <u>Id.</u> at 256.  Accordingly, it is plain from the text of its opinion that the Minnesota Supreme Court was considering the objective purpose of a three-year-old declarant -- i.e., the reasonable child -- rather than T.B.'s subjective intent.  Compare, <u>Crawford v. Washington</u>, supra at 52 (observing that one possible definition of "testimonial" would include "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use

at a later trial," without mention of any standard for child-declarants)[citation omitted],[8] with <u>People v. Sisavath</u>, 118 Cal.App.4th 1396, 1402 n. 3 (Cal. App. 2004) ("Conceivably, the Supreme Court's reference to an 'objective witness' should be taken to mean an objective witness in the same category of persons as the actual witness -- here, an objective four year old[,]" "[b]ut we do not think so."), and <u>State v. Snowden</u>, 867 A.2d 314, 329 (Md. 2005)("[W]e are satisfied that an objective test, using an objective person, rather an objective child of that age, is the appropriate test for determining whether a statement is testimonial in nature.").

Here, it appears that the Minnesota Supreme Court took the position which was rejected by the California Court of Appeals in <u>Sisavath</u>, by concluding that it should consider the perspective of an objective child-declarant, with the relevant age and experience, rather than the perspective of an objective adult, who is observing the

---

[8]Bobadilla incorrectly asserts that this definition of "testimonial statements" was part of the <u>Crawford</u> Court's explicit holding.   See, e.g., <u>Petitioner's Memorandum in Support</u>, <u>Docket No. 10</u>, at 14, 17, 18.  As noted in the text of this Opinion, however, Bobadilla has simply identified **one** of the several proposed definitions of "testimonial statements" which were mentioned, but not endorsed, by the <u>Crawford</u> Court.  See, <u>Crawford v. Washington</u>, supra at 51-52.  Notwithstanding Bobadilla's assertion, the <u>Crawford</u> Court did **not** adopt that definition of testimonial statement -- instead, it explicitly "refus[ed] to articulate a comprehensive definition" of the term.  <u>Id.</u> at 68 n. 10.

interview.  Cf., People v. Sisavath, supra at 1402 n. 3 (concluding that the Crawford Court "meant simply that if the statement was given under circumstances in which its use in a prosecution is reasonably foreseeable by an **objective observer**, then the statement is testimonial.")[emphasis added].

Although Bobadilla may prefer the formulation of the Sisavath and Snowden Courts, he has not shown that the Minnesota Supreme Court applied a standard which was contrary to clearly established precedent.  Nothing in Crawford v. Washington barred the consideration of "the limited cognitive and developmental skills of young children" when contemplating the purpose of out-of-Court statements.  See, State v. Snowden, supra at 328, citing the amicus brief of the American Prosecutors Research Institute; and compare Bobadilla II, supra at 256, also citing the amicus brief of the American Prosecutors Research Institute.  Accordingly, we find no responsible ground upon which to grant Bobadilla's Petition on this basis.[9]

---

[9]We similarly reject Bobadilla's bald assertion that the Minnesota Supreme Court "arrived at a conclusion opposite to that reached by the [United States] Supreme Court on a question of law."  See, Petitioner's Reply, Docket No. 18, at 8-9. As correctly noted by the Respondent, the United States Supreme Court has not yet considered the application of Crawford to a child-declarant's statements to a child-protection worker.  See, Respondent's Memorandum in Opposition, supra at 11 n. 5. Accordingly, the Minnesota Supreme Court did not "decid[e] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams v.

2.    The "Unreasonable Application" Clause.  We turn, then, to the crux of Bobadilla's argument, which is that the Minnesota Supreme Court unreasonably applied Crawford when it concluded that T.B.'s videotaped statements were not testimonial.  We disagree, and conclude that the Minnesota Supreme Court's interpretation of Crawford, and its determination that T.B.'s statement was not testimonial, were not objectively unreasonable.

We first note that both parties have relied upon the Supreme Court's later decision in Davis v. Washington, 547 U.S. 813 (2006), to support their respective positions.  See, Respondent's Memorandum in Opposition, supra at 14; Petitioner's Reply, Docket No. 18, at 19.  In Davis, the Supreme Court refined its decision in Crawford, by holding as follows:

---

Taylor, supra at 412-13.

Moreover, to the extent that Bobadilla asserts that a State Court's decision is "contrary to" Federal law if it "is simply 'erroneous' or wrong," see, Petitioner's Reply, supra at 6, quoting Williams v. Taylor, supra at 388, he is incorrect.  Bobadilla quotes a portion of Williams, which was adopted by only four (4) members of the Supreme Court.  As explained in the text of this Opinion, the majority of the Williams Court reached the opposite conclusion, in holding "that an **unreasonable** application of federal law is different from an **incorrect** application of federal law."  Id. at 410 [emphasis in original].

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Id. at 2273-74 [footnote omitted].

In a footnote, the Court further explained that, "even when interrogation exists, it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate." Id. at 2274 n. 1.

Here, as previously noted, we are not deciding whether T.B.'s videotaped statements were, or were not, testimonial, under either Crawford or Davis. Instead, we consider only whether the Minnesota Supreme Court's determination was objectively unreasonable under what was then clearly established Federal law -- i.e., Crawford, not Davis. The Supreme Court did not issue its decision in Davis until **after** the Minnesota Supreme Court affirmed Bobadilla's conviction in Bobadilla II. Accordingly, we decline to consider whether the Minnesota Supreme Court's decision was objectively reasonable, in light of Supreme Court precedent which was not available for that Court's consideration. See, Osborne v. Purkett, 411 F.3d 911, 914

(8th Cir. 2005)("[A] federal court may not grant the petition unless the state-court decision, viewed objectively and on the merits, cannot be justified under **existing** Supreme Court precedent.")[emphasis added], cert. denied, 547 U.S. 1022 (2006), citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999), cert. denied, 528 U.S. 1143 (2000); Brown v. Greiner, 409 F.3d 523, 533 (2nd Cir. 2005)("Later Supreme Court decisions play no role in assessing the reasonableness of the state court decisions.")[footnote omitted].  At the time of its decision, the Minnesota Supreme Court had the benefit of the Supreme Court's decision in Crawford, and that, alone, constitutes the "clearly established Federal law" underlying Bobadilla's present Petition.

We next acknowledge the decision of our Court of Appeals, in United States v. Bordeaux, supra.  In Bordeaux, the defendant was convicted of the aggravated sexual abuse of a child, after the Trial Court admitted a similar, videotaped statement, in which the victim, AWH, described the defendant's conduct, while being interviewed by a "forensic interviewer."  Id. at 555.  On direct appeal, our Court of Appeals reversed the conviction, after concluding that the admission of the videotape had violated the defendant's rights under the Confrontation Clause.  The Bordeaux Court found that, as with a police interrogation, the interview of AWH had involved

formal questioning, and a government official. Id. at 556. Moreover, the Bordeaux Court concluded that the purpose of the interview "was to collect information for law enforcement," notwithstanding the fact that "AWH's statements may have also had a medical purpose[.]" Id. It further observed that "logic does not dictate, that multi-purpose statements cannot be testimonial." Id.

Although the facts of Bordeaux are analogous to the facts which supported Bobadilla's conviction, the procedural posture of this action is different, given that we sit in Habeas review, and cannot grant Bobadilla's Petition unless the Minnesota Supreme Court's application of Crawford was objectively unreasonable. Accordingly, our Court of Appeals' decision, in Bordeaux, does not compel us to grant Bobadilla's requested relief. We observe only that the Minnesota Supreme Court considered the decision of our Court of Appeals, in Bordeaux, and its disposition of a multi-purpose statement, but nonetheless, concluded that, "where preservation for trial is merely incidental to other purposes, such as assessing and responding to an immediate danger, a statement will not be deemed testimonial." Bobadilla II, supra at 252 [citation omitted].

We next acknowledge that a Court in this District has concluded, in the context of an analogous Petition for Habeas relief, that it would violate Crawford to admit,

at Trial, a videotaped CornerHouse interview -- similar to the CPW's interview of T.B., which is at issue here -- unless the defendant had a prior opportunity to cross-examine the witness.  See, Danforth v. Crist, 2005 WL 2105502 at *2 (D. Minn., August 26, 2005).  Nonetheless, that statement by the Danforth Court was dicta, given that the Court ultimately denied Habeas relief, after concluding that Crawford did not have retroactive applicability to the petitioner's collateral challenge.  Id. at *1.  Accordingly, the Danforth Court had no occasion to consider whether a State Court's application of Crawford was reasonable, or unreasonable, for purposes of Habeas review, which is the issue we consider here.  As a consequence, we do not find the conclusion in Danforth dispositive in this action.

Here, the Minnesota Supreme Court observed that it "determine[d] whether statements were testimonial on a case-by-case basis, especially given the uncertainty surrounding Confrontation Clause issues following Crawford."  Bobadilla II, supra at 250.   Since the Crawford Court had declined to define what constitutes a "testimonial statement," the Minnesota Supreme Court considered both the purpose of the declarant, and the purpose of the interviewer, among other related factors, after noting that, according to Crawford, the Confrontation Clause was intended to protect against both "scheming declarants," and "corrupt government officials."  Id., citing

- 31 -

Crawford v. Washington, supra at 44. The Minnesota Supreme Court also concluded that its multi-factor analysis was consistent with other Courts, from other jurisdictions, which were struggling to develop a workable definition of "testimonial," after Crawford.  Id. at 250-51.

The Minnesota Supreme Court acknowledged that "statements taken by non-police-officer government officials could be testimonial."  Id. at 252 n. 5, citing Crawford v. Washington, supra at 66.  It further acknowledged that "courts in several jurisdictions have held that the statements of children in interviews conducted by social workers or police investigators are testimonial."  Id. at 253.  Nonetheless, it found those cases factually distinguishable.  For example, in State v. Mack, 101 P.3d 349, 352 (Or. 2004), the Oregon Supreme Court concluded that a human-services worker "was serving as a proxy for the police," and in In re T.T., 815 N.E.2d 789, 802 (Ill. App. 2004), the Illinois Court of Appeals determined that a family-services interviewer was acting "with an eye toward prosecution."  See, Bobadilla II, supra at 253 n. 6.  In contrast, the Minnesota Supreme Court concluded that, because the interview, here, occurred within the context of Minnesota Statutes Section 626.556, "neither the [CPW] nor the child declarant, T.B., were acting, to a substantial degree, in order to produce a statement for trial."  Id. at 254.  Instead, as previously noted, the

Court found that the interview had an "overriding purpose" of "assessing and responding to imminent risks to T.B.'s health and welfare." Id. at 255.

We conclude that the Minnesota Supreme Court's determination was not objectively unreasonable, in light of Crawford.  As noted, the Crawford Court expressly declined to provide any definition of "testimonial," but instead, left the issue open for development by lower Courts.  The Minnesota Supreme Court considered the purpose of both the declarant, and the interviewer, which was, at that time, in accord with the approach of several other jurisdictions.  Id. at 250-51 (summarizing cases).  Similarly, in Crawford, the Supreme Court identified "statements that declarants would reasonably expect to be used prosecutorially," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," as potential categories of "testimonial" statements.  See, Crawford v. Washington, supra at 51-52 [citations omitted].  This section of the Crawford Court's analysis supports the Minnesota Supreme Court's consideration of the declarant's purpose -- here, T.B.  In addition, the Crawford Court spent considerable time outlining the historical "investigative and prosecutorial function" of magistrates, and their modern counterparts, the police, who acted as interrogators.  Id. at 53.  This

prong of analysis lends credence to the Minnesota Supreme Court's consideration of the interviewer's purpose -- here, the CPW.

The Minnesota Supreme Court found that the CPW's primary function, under Minnesota Statutes Section 626.556, was to protect T.B.'s health and welfare. Bobadilla argues that Crawford applies not only to police officers, but to "social workers, child protection workers, or other government workers," who examine suspects, or witnesses, before Trial. See, Petitioner's Memorandum in Support, supra at 10. Although the Crawford Court expressed concern about one-sided interrogations by "government officers," it used that term in connection with the "investigative and prosecutorial function" of police, which supports the Minnesota Supreme Court's decision to focus on the function, or purpose, of the interview. See, Crawford v. Washington, supra at 53. Moreover, the Minnesota Supreme Court did not dispute that an interview by a social worker, or other government official, could, in some cases, be "tantamount to police interrogations, and therefore testimonial." See, Bobadilla II, supra at 254. Nonetheless, here, the Minnesota Supreme Court concluded that neither the interviewer, nor the declarant, acted with the purpose of producing a statement for Trial, and that determination is not objectively

unreasonable.[10]  Id.  Indeed, the Minnesota Supreme Court observed that "[t]he parties do not dispute that the interview of T.B. was conducted in accord with" Minnesota Statutes Section 626.556.  Id.

Bobadilla also argues that the Minnesota Supreme Court unreasonably refused to extend the holding in Crawford, from police interrogations, to an interview by a forensically trained child-protection worker.  See, Petitioner's Reply, supra at 12. "[A] state court's decision involves an unreasonable application of Supreme Court precedent when the state court 'identifies the correct governing legal rule from [the Supreme] Court's cases but * * * either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or

---

[10]We reject the Respondent's argument that the Minnesota Supreme Court made a finding of fact with respect to either T.B.'s purpose, or the CPW's purpose, in conducting the interview.  See, Respondent's Memorandum in Support, supra at 17.  At no point in its analysis does the Minnesota Supreme Court cite to the Trial transcript, in order to ferret out the CPW's subjective purpose for conducting the interview.  Instead, as noted in the text of this Opinion, the Court focused solely on the objective purpose of a child-protection worker, when that worker acts within the scope of Minnesota Statutes Section 626.556.  See, Bobadilla II, supra at 254-56. Moreover, given Bobadilla's position, that the Crawford standard is an objective one, we similarly reject his implicit request that we find, based on the CPW's testimony, that she had the subjective intention of acting as the police department's "pawn," "mouthpiece," or agent.  See, Petitioner's Memorandum in Support, supra at 22.  We consider only whether the Minnesota Supreme Court's application of Crawford, to the facts presented, was objectively unreasonable.

unreasonably refuses to extend that principle to a new context where it should apply.'" Moore v. Purkett, 275 F.3d 685, 688 (8th Cir. 2001), quoting Williams v. Taylor, supra at 407.

We acknowledge, as did the Minnesota Supreme Court, that a police officer was present when the CPW conducted her interview of T.B.  See, Bobadilla II, supra at 247.   However, the Minnesota Supreme Court observed that the State statute required coordination between the child welfare agency, and law enforcement.  Id. at 254.   The Court also observed that "[a]voiding multiple interviews is a critical concern when dealing with children not only because the interviews are often traumatic for the child, but also because multiple interviews increase the chance that the children will be confused by unnecessarily suggestive questions." Id. at 255. Moreover, as previously noted, the Court found that, "[i]f part of the purpose of this interview was to produce a statement for use at a future trial, such a purpose was at best incidental [* * * .]" Id.  Again, because we find that the Minnesota Supreme Court reasonably applied the precedent of Crawford, in determining that the CPW did not act with the substantial purpose of producing a statement for Trial, we reject Bobadilla's argument in this respect.

- 36 -

We emphasize that it is not our province to determine, anew, whether T.B.'s videotaped statements were testimonial -- for that is not our role within the constrained scope of Habeas review.  Accordingly, finding no merit in Bobadilla's Petition for Habeas relief, we recommend, therefore, that the Petition be denied.

NOW, THEREFORE, It is  –

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be denied.


Dated:  March 25, 2008               *s/Raymond L. Erickson*
                                     Raymond L. Erickson
                                     CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than April 11, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply

with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than April 11, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.